**Robert B. TURNER, et al., Plaintiffs,**

v.

**JOHNSON & JOHNSON, et al., Defendants.**

Civ. A. No. 79–2259–S.

United States District Court, D. Massachusetts.

July 11, 1988.

Joseph M. Alioto, San Francisco, Cal., Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, Mpls., Mn., for plaintiffs.

Herbert Weissblum, Boston, Mass., Frederick T. Davis, Patterson, Belknap, Webb & Tyler, New York City, for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

SKINNER, District Judge.

This action was originally tried before another district judge on a complaint alleging breach of contract, fraud and violation of M.G.L. c. 93A in the purchase by the defendant Johnson & Johnson ("the defendant") of the plaintiffs' business, American Medical Electronics Corporation ("AMEC"), which manufactured an electronic clinical thermometer called Meditemp. A judgment for the plaintiffs on several claims of fraud was reversed by the court of appeals, *Turner v. Johnson & Johnson*, 809 F.2d 90 (1st Cir.1986), and the case remanded for a new trial on but one of the claims of common law fraud. The court of appeals suggested, however, that it had seriously considered ordering the dismissal of the entire case, that it doubted that the plaintiff would prevail at a new trial, and that the district court should consider the resolution of the matter by motion for summary judgment.

The defendant has responded to the court's suggestion, and its motion for summary judgment is before me. The initial task is to determine what issues the court of appeals has left open for decision on this motion. Further, the motion for summary judgment must be considered in the light of standards for the entry of summary judgment recently announced by the Supreme Court. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The history leading to this litigation is set forth with admirable clarity in the opinion of the court of appeals. 809 F.2d at 92–94. The critical part of the case may be briefly summarized. The plaintiffs' product, rights to which were acquired by the defendant, was an electronic clinical thermometer, superior to competing products because of its handy size and ease of use. It also was equipped with a timer, which enabled a nurse using the thermometer to take the patient's pulse without looking at a watch. This device was automatically activated when the thermometer probe was used, and emitted a signal after thirty seconds had elapsed. The attendant circuitry was patented.

Coincidentally with its negotiations with the plaintiffs, the defendant was also negotiating to purchase the rights to a competing thermometer called the Survalent, which also had a timing device. At the time of closing with the plaintiffs, defendant had acquired an option to purchase the Survalent but it did not exercise the option until eighteen months later. Prior to the closing, the defendant had learned of an overlap between the Meditemp patent and the Survalent patent application but deliberately did not inform plaintiffs of the conflict. Ultimately, litigation in the patent office established the priority of the Meditemp patent, but this outcome was not certain at the time of the closing. In addition to the facts stated by the court of appeals,

it now appears as an uncontradicted fact that there were several other electronic thermometers on the market at the time which also were equipped with pulse timers. However, the IVAC thermometer, which was by far the dominant product in the field, did not have a pulse counting feature at that time.

The alleged fraudulent misrepresentation consists of nondisclosure. The defendant was obliged to disclose its interest in any other thermometer at the closing with plaintiffs. At the last minute, the defendant's executive, Hartman, disclosed the defendant's interest in the Survalent, describing it as an "IVAC type thermometer," i.e., a large, relatively awkward device, but failing to mention the pulse counting feature. He added, "Don't worry about it."

There is conflicting evidence as to whether describing the Survalent as an IVAC type thermometer without mentioning the timer was adequate disclosure. The court of appeals ruled that a jury could find that the omission was material. 809 F.2d at 98–9. The plaintiffs have testified that they would not have gone through with the sale if they had known of Survalent's pulse counting feature. While I personally do not find this statement credible in the light of subsequent events, this testimony, in addition to the considerations voiced by the court of appeals, creates a jury issue.

The court of appeals expressed considerable doubt concerning the sufficiency of the plaintiffs' evidence of fraudulent intent. 809 F.2d at 99. The court resolved the issue from its point of view as follows:

> [W]e think a reasonable jury *conceivably* could have found that Johnson & Johnson defrauded plaintiffs into selling their business at an unfair price so that Johnson & Johnson would be able to control the marketing of these potentially competing products. [Emphasis supplied]

> . . . . .

> Notwithstanding our reluctance to take this case from the jury on this point, we would urge the district court on remand to consider Johnson & Johnson's argument on motive and, if Johnson &

Johnson can rebut through affidavits our theory and any other proposed motive offered by the plaintiffs, it should consider, if filed, a renewed motion for summary judgment.

In the absence of positive evidence of fraudulent intent, if the factual context makes an inference of fraud economically implausible, then the plaintiffs must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. at 574, 106 S.Ct. at 1349–50. The court of appeals' use of the word "conceivably" may not accurately reflect the standard to be applied in view of *Matsushita* and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512.

In my opinion, the defendant has presented uncontradicted evidence sufficient to rebut the theory offered by the court of appeals. In the first place, it is by no means established that the selling price for the plaintiffs' company was unfair, given its serious financial condition. More importantly, however, there is uncontradicted evidence that several other competing thermometers had pulse counting features. Acquisition by the defendant of both Meditemp and Survalent would not have permitted the defendant to control the market insofar as the pulse timer was concerned. In this context, it is clear to me that the differences between Meditemp and Survalent in size and configuration were far more significant for competitive purposes than was the pulse counting feature.

Defendant, moreover, has made what is to me a telling point on the issue of the economic implausibility of a fraudulent intent, namely that under the contract the plaintiffs would have been entitled to royalties on sales of Survalent probes as well as on the sale of Meditemp probes if the Survalent was covered by the plaintiffs' patent.[1] Of course, at the time the overlap of the patents was known to the defendant, but the ultimate validity of the Meditemp had not been established. Either way, however, it would have seemed to be to the

---

1. This assertion is challenged by plaintiffs in its opposition, but appears to be established as a matter of law by ¶ 2.3(ii) of the Purchase Agreement (Plaintiffs' Exhibit 754).

economic advantage of the defendant to disclose the full situation. If the Meditemp patent were to prevail (as it did), the plaintiffs would get royalties from either or both devices. On the other hand, if the Meditemp patent was subject to serious question, the defendant was in a position to bargain the price down.

Nevertheless, I would not be willing to grant summary judgment for the defendant on the issue of fraudulent intent. The defendant's secretive behavior was very peculiar, all the more so because apparently contrary to its economic interest. It seems to me that a jury, under all the circumstances, might reasonably infer the deliberate concealment of a material fact, arguably for the purpose of avoiding further discussion and a delay in closing the transaction. The court of appeals has ruled that the omission was material. I consider that ruling to be binding for purposes of this motion.

The matter of damages, however, is another story. Contrary to the assertion in the plaintiffs' brief, the court of appeals did not rule that there was sufficient evidence of damages on this record. What the court said was the following:

> Finally, we have some doubt that plaintiffs can show that they were injured as a result of reliance on the alleged misrepresentation regarding Survalent. We think it insufficient for plaintiffs to produce statistics showing that their business was worth more than Johnson & Johnson paid for it. Rather, plaintiffs also need to demonstrate that if they knew Survalent had a pulse-counting feature, they would have demanded more money from Johnson & Johnson, and that Johnson & Johnson would have been likely to pay a higher sum. Or they would need to show that they would have chosen not to sell the business, and that, despite their financial problems, they would have earned more from their business than they received from Johnson & Johnson. Despite our doubts, we can not say that it is impossible for a jury focusing on this issue to find that Johnson & Johnson would have paid a higher figure.

I read this passage as meaning that the plaintiffs on remand should have the chance to adduce evidence on either one of the alternative grounds for awarding damages. Possibility of a finding is not a ground for defeating a motion for summary judgment. The opponent of the motion must offer concrete evidence from which a reasonable juror could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–252 and 256, 106 S.Ct. at 2514. The plaintiffs have failed to produce evidence by affidavit or otherwise which would warrant a finding of damages of the order described by the court of appeals in the above quoted passage.

The record offers no basis for a conclusion that the defendant would have paid more for the plaintiffs' business than it did, which was apparently more than anyone else had offered. It was after all the plaintiffs who initiated the transaction, and who by their own admission at oral argument were anxious to sell.

To support the claim that they could have made more money by operating the business themselves, plaintiffs offer a projection prepared by Mr. Turner based on a number of assumptions, Exhibit 769A. This exhibit was excluded at trial as being unduly speculative. The trial judge is a nationally recognized author and lecturer on the law of evidence, and his view is entitled to great weight. In any case, I have examined the exhibit and agree that there is insufficient support in the record for the assumption upon which Mr. Turner bases his projections. To the extent that these projections are based in part on defendant's forecasts, they indicate what business the defendant might have done with its vast distribution system. They are not probative of what the plaintiffs' company would have done under a management which was anxious to get out of the business.

Accordingly, I find and rule that the plaintiffs have failed to show that they would offer evidence at trial which would justify a trier of fact in making an award of damages of the type which the court of appeals has required. The defendant's motion for summary judgment is therefore ALLOWED.

Judgment for all defendants shall be entered forthwith.